## TROY HARRIS v. COMMISSIONER OF CORRECTION
## (AC 30040)

Harper, Lavine and Beach, Js.

---

Submitted on briefs January 8—officially released May 18, 2010

*Temmy Ann Pieszak*, chief of habeas corpus services, filed a brief for the appellant (petitioner).

*John A. Connelly*, state's attorney, *Harry Weller*, senior assistant state's attorney, and *John J. Davenport*, supervisory assistant state's attorney, filed a brief for the appellee (respondent).

*Opinion*

BEACH, J. The petitioner, Troy Harris, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the court improperly (1) relied on a presumption of attorney competence, (2) defined the concept of exculpatory evidence and (3) failed to address trial counsel's decision not to call alibi witnesses at the criminal trial on account of ethical concerns. Additionally, he claims that the court abused its discretion when it denied his petition for certification to appeal. We dismiss the appeal.

On the direct appeal, this court summarized the facts underlying the petitioner's conviction as follows. "On May 16, 2000, John Simpson drove Howard Dozier and Hector Quinones to Washington Street in Waterbury to pick up Ray Ramos. At that time, the [petitioner] was residing at 39 Washington Street with Tammi Jamison, the mother of his child. Simpson stopped the vehicle he was driving on Washington Street in a driveway between the [petitioner's] house and the house where they were picking up Ramos, and all three men exited the car. Dozier walked up the street and encountered the [petitioner] standing on his porch at 39 Washington Street. Dozier and the [petitioner] had a brief conversation. As Dozier turned his back to the [petitioner] in an attempt to return to the vehicle in which he had arrived, the [petitioner] began firing an Uzi machine gun at Dozier. Dozier ran back to the vehicle and he and Simpson drove off. The [petitioner] continued to fire at the vehicle, and Simpson, who was driving, was shot in his neck.

"The [petitioner] was tried to a jury, which found him guilty of attempting to murder Simpson and Dozier, as well as the first degree assault on Simpson. The [petitioner] received a total effective sentence of forty years imprisonment." *State* v. *Harris*, 85 Conn. App. 637, 639–40, 858 A.2d 284, cert. denied, 272 Conn. 901, 863 A.2d 695 (2004).

In his amended habeas petition, the petitioner claimed that trial counsel, Robert Berke, "failed to properly investigate all possible exculpatory and/or alibi witnesses" and therefore had rendered ineffective assistance of counsel. In its memorandum of decision, the court concluded that Berke did not render ineffective assistance of counsel and that his failure to call several individuals as alibi witnesses at the criminal trial was a valid strategic decision. The court credited Berke's testimony that he tried to discourage the petitioner from testifying at the criminal trial but that the petitioner wanted to testify regardless of whether the alibi witnesses did so. The petitioner's testimony differed from that which would have been offered by the putative alibi witnesses. The court noted that as conflicting as the petitioner's own versions of his alibi were, the addition of alibi witnesses would likely have made matters worse for the petitioner. The court thereafter denied his petition for certification. This appeal followed. Additional facts will be set forth as necessary.

We first set forth our standard of review. "In a habeas appeal, although this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the

two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense." (Citation omitted; internal quotation marks omitted.) *Griffin* v. *Commissioner of Correction*, 119 Conn. App. 239, 241, 987 A.2d 1037, cert. denied, 295 Conn. 912, 989 A.2d 1074 (2010). With those standards in mind, we turn to the petitioner's claims.

I

The petitioner first claims that, when reviewing his claim of ineffective assistance, the court improperly applied the presumption of attorney competence as set forth in *Strickland* v. *Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984),[1] by giving it evidentiary weight. We are not persuaded.

---

[1] "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the

To demonstrate the court's claimed improper usage of *Strickland*'s presumption of attorney competence, the petitioner focuses on the placement of wording in the court's memorandum of decision. The petitioner avers that "[i]nstead of restating the presumption in the portion of the memorandum setting forth the applicable standard, the court placed the presumption after its review of the evidence in the case. That placement of the presumption language demonstrates that the court relied upon the presumption in lieu of evidence." The petitioner sets forth an in-depth argument as to why the presumption of attorney competence does not carry evidentiary weight. We need not address this argument because there is no indication that the claimed error occurred.[2]

The court's memorandum of decision does not reveal that it gave evidentiary weight to the presumption of attorney competence. In its decision, the court made several factual findings regarding Berke's decision not to call several individuals as alibi witnesses in the petitioner's criminal trial. The court concluded that "Berke thus had several valid, strategic reasons for not calling the alibi witnesses to testify in the criminal trial. The petitioner has not overcome the presumption that trial counsel made all significant decisions in the exercise of reasonable professional judgment. . . . Therefore, the petitioner has failed to prove deficient performance." (Citation omitted; internal quotation marks omitted.)

---

evaluation, a court must indulge a *strong presumption* that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citation omitted; emphasis added; internal quotation marks omitted.) *Strickland* v. *Washington*, supra, 466 U.S. 689.

[2] On the basis of the record before us, we need not and do not address the question of whether *Strickland*'s presumption of attorney competence disappears once evidence to the contrary is introduced.

The placement of the presumption of attorney competence in a paragraph containing the court's conclusion that the petitioner had not proven deficient performance does not establish that the court gave the presumption evidentiary weight. The decision, in fact, is silent in this regard. The petitioner did not seek to have the court articulate the manner in which it used the presumption of attorney competence. In the absence of a motion for articulation, we read the record to support the judgment. See *State* v. *Reynolds*, 264 Conn. 1, 30 n.21, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).

Because the memorandum of decision does not reveal that the claimed error occurred, we are not persuaded that this claim involves issues that are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions are adequate to deserve encouragement to proceed further.

II

The petitioner next claims that the court improperly defined the concept of exculpatory evidence. He argues that, as a result, it was futile for him to present evidence regarding the psychological history of Jamison, a state's witness in the petitioner's criminal trial, which history Berke failed to elicit in the criminal trial. We are not persuaded.

At the petitioner's criminal trial, Jamison identified the petitioner as the shooter. She testified that on the night of the shooting, she saw the petitioner leave the apartment with a machine gun. Jamison further testified that the petitioner told her that he fired the gun from the porch and that there was no question in her mind that the petitioner was the person who fired the gun from her porch.

In his pretrial brief to the habeas court, the petitioner noted that in the underlying criminal trial, Berke's predecessor filed a motion to obtain Jamison's psychiatric records. He further noted that at the criminal trial, Berke did not pursue the motion or question Jamison regarding her psychiatric status at the time of the crime. He further stated that Jamison was expected to testify at the habeas trial that she has significant psychiatric history, was prescribed medication for the treatment of her psychiatric issues and that she was noncompliant with her medication regimen at the time of the crime and the investigation into the crime. He claimed in his pretrial brief that Jamison was highly susceptible to the threats and coercion of Waterbury police officers, and that this susceptibility resulted in Jamison's providing a statement to the police that did not contain the truth as she knew it to be and, instead, reflected the beliefs of the Waterbury police officers.

At the habeas hearing, the petitioner's counsel asked Berke whether he had arranged for Jamison's psychiatric records to be brought to the trial court and whether the records remained sealed. The respondent, the commissioner of correction, objected and claimed that the question was beyond the scope of the petition, which alleged that there was an improper investigation into exculpatory alibi witnesses. The court stated: "I'm inclined to think that it's not exculpatory because she doesn't testify that the petitioner didn't commit the crime. But I'll *allow* testimony on it and I'll sort it out after the case is presented." (Emphasis added.) The petitioner's counsel then asked Berke whether Jamison's psychiatric records were brought to the court under seal. Berke responded: "I had subpoenaed records, and I got a response from one hospital. One document, which you're looking at, says that there were no records. And both [facilities] say they . . . didn't have any records."

The petitioner argues that the court mistakenly concluded that the evidence that Jamison's psychiatric illness led her to provide a coerced and false statement was not exculpatory and that the court thus refused to consider evidence in support of such a claim. As a result, he claims, he was not able to present his habeas case fully. He contends that this evidentiary ruling made it futile for habeas counsel to call Jamison to testify at the habeas trial to describe her psychological history and susceptibility to police coercion, which Berke had failed to elicit at the criminal trial.

The petitioner requests plain error review of his unpreserved claim.[3] See Practice Book § 60-5. "[T]he plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *State* v. *Bowman*, 289 Conn. 809, 817, 960 A.2d 1027 (2008). The petitioner cannot prevail because the claimed error did not occur. Contrary to the petitioner's claim, the court did not exclude inquiry into Jamison's psychiatric issues. The court stated that although it was "inclined to think that it's not exculpatory," it would "*allow* [the] testimony" and would "sort it out after the case [was] presented." (Emphasis added.)

The petitioner also claims that the court failed to consider his claim that Berke was ineffective for failing

---

[3] The petitioner does not request review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), of his unpreserved evidentiary claim. See *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 67 n.2, 967 A.2d 41 (2009) (*Golding* review applicable when petitioner challenges actions of habeas court itself). Accordingly, we decline to engage in a *Golding* analysis of this claim. See *State* v. *Bourguignon*, 82 Conn. App. 798, 801, 847 A.2d 1031 (2004) ("failure to address the four prongs of *Golding* amounts to an inadequate briefing of the issue" [internal quotation marks omitted]).

to investigate exculpatory evidence regarding Jamison's psychiatric history.[4] This is inaccurate because the court did consider such a claim.

The court noted: "The petitioner did not allege this claim in his petition. Further, the testimony established that Berke did subpoena Jamison's psychiatric records and that the providers responded that they had no records. Accordingly, there is no merit to this claim." The court addressed the claim that Berke was ineffective for failing to pursue the disclosure of Jamison's psychiatric records and found that it had no merit.

The petitioner has failed to demonstrate that this claim involves issues that are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions are adequate to deserve encouragement to proceed further. Absent an adverse ruling on this issue, there was no reviewable issue for the court to certify. See *Mitchell* v. *Commissioner of Correction*, 68 Conn. App. 1, 7, 790 A.2d 463 ("[t]his court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the appellant's claim" [internal quotation marks omitted]), cert. denied, 260 Conn. 903, 793 A.2d 1089 (2002).

### III

The petitioner next claims that the court improperly avoided certain ethical issues when determining that Berke's decision not to present alibi witnesses at the criminal trial was a valid strategic decision. At the habeas hearing, Berke testified that he was concerned that if he offered certain testimony from alibi witnesses at trial, he might be suborning perjury. The petitioner

---

[4] Psychiatric records are generally privileged but can sometimes be obtained by following proper procedures. See General Statutes § 52-146e.

argues that the court improperly failed to address how this ethical concern influenced Berke's decision not to call alibi witnesses at the criminal trial. The petitioner claims that the court improperly avoided "analyzing the interaction between the ethical rules and the right to the effective assistance of counsel and the right to present a defense." We are not persuaded.

It was not improper for the court not to address Berke's ethical concerns. The petitioner did not raise the ethical considerations in the amended petition, nor did he sufficiently alert the court that he was raising the issue. This claim is not properly at issue in the present appeal, and it was neither raised before nor addressed by the court in its memorandum of decision. See *Wilcox* v. *Schwartz*, 119 Conn. App. 808, 817 n.7, 990 A.2d 366 (2010). We are under no obligation to consider such a claim. See, e.g., *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 170–71, 745 A.2d 178 (2000); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial").

The court did not abuse its discretion in denying certification to appeal an issue that was not first presented to the court and then ruled on by it. See *Mitchell* v. *Commissioner of Correction*, supra, 68 Conn. App. 7.

The appeal is dismissed.

In this opinion the other judges concurred.