## JASON GASTON *v.* COMMISSIONER OF CORRECTION
### (AC 31068)

Bishop, Robinson and Dupont, Js.

Argued October 28—officially released December 14, 2010

*W. Theodore Koch III*, for the appellant (petitioner).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's

attorney, and *Nicholas J. Bove, Jr.*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

DUPONT, J. The petitioner, Jason Gaston, appeals following the habeas court's granting of his petition for certification to appeal from the judgment denying in part his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly rejected his claim of actual innocence. More specifically, the petitioner argues that there was merit to his claim of actual innocence because the testimony of a potential witness, Jessie DaCosta, is newly discovered evidence that would have changed the guilty verdict. We conclude that, regardless of whether DaCosta's testimony is newly discovered evidence, that testimony would not establish the petitioner's actual innocence. Accordingly, we affirm the judgment of the habeas court.

The petitioner was charged with, and after a jury trial was convicted of, one count of burglary in the third degree in violation of General Statutes § 53a-103.[1] The court sentenced the petitioner to a five year term of incarceration consecutive to a sentence he was already serving. The petitioner appealed from his conviction to this court, and we affirmed the judgment in a per curiam decision, without opinion, in *State* v. *Gaston*, 104 Conn. App. 901, 933 A.2d 754, cert. denied, 285 Conn. 902, 938 A.2d 593 (2007).

The events that resulted in the defendant's conviction occurred on July 10, 2005, at a Pella Window warehouse in Monroe. The jury reasonably could have found the following facts, as recited by the habeas court. "[The petitioner], who was employed by Pella Windows &

---

[1] The petitioner was also charged with but acquitted of one count of attempt to commit larceny in the third degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-124 (a) (2).

Doors as an inside salesman in [its] Derby store, discussed the sale of a five foot sliding door with a customer named Arkaduiaz Dobrzycki and his wife, Beata, in the Derby store sometime in July, 2005. Although the couple found a door they liked, they felt it was too expensive. [The petitioner] suggested they fill out a contact sheet and he would call them if he could locate a similar, but less expensive, door in the tag sale area located in a Pella warehouse in Monroe."

The habeas court noted that "Frank Najpauer, operations manager for Pella, describe[d] the warehouse as a storage facility for orders placed by customers awaiting local delivery. The products were placed in racks throughout the warehouse and marked with customers' names. In an open area to the left of the door were products in disarray, which had been damaged, cancelled or returned. This was termed the tag sale area."

"[There was testimony] that the job description for an inside salesman, the position for which [the petitioner] had been hired, was generally one who 'provides support to homeowners, contractors and builders that visit the Pella Windows stores.' Although the details in the job description include such duties as making follow-up calls for sales and training outside salespeople, all of the activities take place on the [sales] store premises. Both [Najpauer and general sales manager William Flynn] emphasized that the only people authorized to sell items out of the Monroe warehouse were outside trade salespeople. Moreover, the outside salesperson would necessarily have to inform a manager to meet him at the facility with the customer. Only managers and drivers who have to make early pick-up[s] had keys to the warehouse for security purposes. . . .

"Without informing any managers of his intent to meet a customer at the warehouse, [the petitioner] left a message for [the Dobrzyckis] on Saturday, July 9,

2005, that he would meet them at the Monroe facility between 9 a.m. and 12 p.m. on Sunday, July 10, 2005. [The Dobryzckis] and their children arrived at the warehouse a few minutes after 9 a.m. When he arrived, [Arkaduiaz] Dobryzcki noticed only one car in the parking lot, a Jeep. The family was met by [the petitioner] who brought them through the unlocked door at the rear entrance. There were two other men there, 'Hispanic or light black.' [The petitioner] showed the Dobryzckis a door that they agreed to purchase, but [the petitioner] said he could only accept cash because there was no machine there able to process credit card purchases. Dobryzcki said he would go to his bank and return before 12 p.m. with the cash. . . .

"Sometime thereafter, at approximately 10 a.m., Christopher Hoffman, who had arranged to pick up a window for a customer of his, arrived at the warehouse and saw four or five men run out of the back door, jump into a Jeep Cherokee and speed away. Hoffman then drove over to a car where . . . Flynn was waiting for him. . . . Hoffman reported what he had witnessed to Flynn, who immediately unlocked the front door of the warehouse and saw lights on, retrieved a planner with [the petitioner's] name on it, but saw no one inside. He then called . . . Najpauer, to check if anyone had been authorized to be in the building on Sunday morning. When Najpauer said, 'no,' Flynn then called the Monroe police, who responded to the scene. The incident report filed by Officer [John] Yaworoski indicated that three men, Jessie DaCosta, Nelson Branco and Brashaun Thompson, were picked up and questioned in the vicinity of the Monroe warehouse. . . .

"At approximately 11:30 a.m., [Arkaduiaz] Dobryzcki returned to the warehouse where he saw a few police officers and asked for [the petitioner], who was no longer there. . . . Flynn and a police officer asked [Arkaduiaz] Dobryzcki to show them the door [that the

petitioner] was going to sell him. He did so and . . . Flynn told him that this door was ordered for someone else and it was just being stored there. It was still in the package with a label on it with the customer's name and a current date when it was supposed to be delivered. The retail value of the door was about $3500. [Arkaduiaz] Dobryzcki was offered a deal of $1800 or $1900, cash only. . . .

"The following morning [the petitioner] reported for work at the Derby Pella store. [Najpauer questioned him in the presence of the human resource manager]. . . . At an early point in the questioning, [the petitioner] changed his story from denying being at the warehouse on Sunday morning to admitting being there to meet a customer. It was at that point [that] Najpauer asked [the petitioner] if he would be willing to speak to the police who were investigating an incident which occurred at the warehouse on July 10, 2005. [The petitioner] agreed." Additional facts will be set forth as necessary.

The petitioner filed an amended petition for a writ of habeas corpus.[2] In count one, he alleged that he is actually innocent of the charge of burglary in the third degree. In count two, he alleged ineffective assistance of his trial counsel. The habeas court denied the petition on these counts because it concluded that the evidence adduced at the habeas trial did not establish the petitioner's actual innocence and that the petitioner had failed to demonstrate how he was prejudiced by any of the claimed deficiencies of his trial counsel. On

---

[2] In count three, the petitioner alleged that because his trial counsel failed to file a timely application for sentence review as the petitioner requested, his right to sentence review should be reinstated. The habeas court granted the petition on this count because it found that it was in the interest of justice to restore the petitioner's right to pursue sentence review and ordered the right to be restored for thirty days. Neither party has raised any issue on appeal relating to the petitioner's right to sentence review.

appeal, the petitioner does not pursue his allegations as to the ineffective assistance of counsel claim. Therefore, his sole claim of error concerns the habeas court's determination that the petitioner was not actually innocent of the charge of burglary in the third degree.

We set forth the applicable standard of review and relevant principles of law. In *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 747, 700 A.2d 1108 (1997), our Supreme Court "held that the proper standard for evaluating a freestanding claim of actual innocence . . . is twofold. First, the petitioner must establish by clear and convincing evidence that, taking into account all of the evidence—both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial—he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom . . . no reasonable fact finder would find the petitioner guilty of the crime." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 80–81, 967 A.2d 41 (2009).

"[O]ur Supreme Court has deemed the issue of whether a habeas petitioner must support his claim of actual innocence with newly discovered evidence an open question in our habeas jurisprudence. . . . This court, nevertheless, has held that a claim of actual innocence must be based on newly discovered evidence. In *Weinberg* v. *Commissioner of Correction*, 112 Conn. App. 100, 119, 962 A.2d 155, cert. denied, 291 Conn. 904, 967 A.2d 1221 (2009), we stated: [A] writ of habeas corpus cannot issue unless the petitioner first demonstrates that the evidence put forth in support of his claim of actual innocence is newly discovered. . . . This evidentiary burden is satisfied if a petitioner can demonstrate, by a preponderance of the evidence, that the proffered evidence could not have been discovered

prior to the petitioner's criminal trial by the exercise of due diligence." (Citation omitted; internal quotation marks omitted.) *Sargent* v. *Commissioner of Correction*, 121 Conn. App. 725, 734–35, 997 A.2d 609, cert. denied, 298 Conn. 903, 3 A.3d 71 (2010).

The following facts are relevant to the petitioner's claim of actual innocence. Officer Yaworoski testified at the petitioner's criminal trial that he questioned DaCosta, Branco and Thompson, the three men who were picked up in the vicinity of the Monroe warehouse on July 10, 2005. Yaworoski testified that DaCosta had been approached by a black male at a Lowe's store in Orange who told him he could save him money on windows. DaCosta, Branco and Thompson were at the warehouse on July 10, 2005, to meet that individual. In his report, Yaworoski indicated that the black male was " 'possibly' " the petitioner. As noted by the habeas court, Yaworoski testified both at the criminal trial and at the habeas proceedings that it was his own inference and conclusion that led him to indicate that it was " 'possibly' " the petitioner who approached DaCosta at Lowe's and arranged to meet him at the warehouse. DaCosta never identified the black male by name. Despite efforts by the petitioner's trial counsel to obtain DaCosta's testimony, DaCosta did not testify at the petitioner's criminal trial. DaCosta did, however, testify at the habeas trial that the petitioner was not the individual who approached him in the Lowe's store, that he had never met the petitioner before and that he did not see the petitioner at the Monroe warehouse that day.

The petitioner claims that DaCosta's testimony constitutes newly discovered evidence. He maintains that because the jury never heard DaCosta's testimony, it must have believed that it was the petitioner who approached DaCosta at Lowe's and arranged for DaCosta, Branco and Thompson to be at the warehouse

that morning.[3] He submits that, had DaCosta testified that he met a different man at Lowe's and at the warehouse, the petitioner would have been acquitted on all charges. We are not persuaded.

Even if we assume, without deciding, that the petitioner has demonstrated that DaCosta's testimony could not have been discovered prior to the petitioner's criminal trial by the exercise of due diligence, the petitioner has not satisfied his burden of demonstrating his actual innocence. We are only concerned with the effect of DaCosta's testimony on the crime of burglary. As noted by the habeas court: "The court emphasizes that the petitioner stands convicted of one count of burglary in the third degree. The state here was required to prove beyond a reasonable doubt that the petitioner entered or remained unlawfully in a building with intent to commit a crime therein. . . . [See] General Statutes § 53a-103 (a). [Arkaduiaz] Dobrzycki testified in the criminal trial that he met the petitioner at the warehouse on Sunday morning, when the petitioner did not have authorization or permission to be at the warehouse, to pay the petitioner nearly $2000 in cash for a door that another Pella customer had already purchased and that was awaiting delivery. The petitioner, after initially denying to his employer that he was at the warehouse on Sunday, changed his story and admitted that he in fact was there on Sunday." DaCosta's testimony does not alter any of those facts, which are sufficient to support a conviction of burglary. We cannot conclude, based on our review of the record, that the petitioner has established by clear and convincing evidence that

---

[3] We do not accept this premise. Yaworoski testified at the criminal trial that it was his own inference and conclusion that led him to indicate that it was " 'possibly' " the petitioner who approached DaCosta at Lowe's and, as noted by the habeas court, the petitioner's counsel "emphasized throughout his [closing] argument that . . . DaCosta and others did not mention or identify the petitioner . . . ." It is entirely possible that the jury rejected the notion that the petitioner ever met DaCosta.

he is actually innocent of the burglary charge of which he stands convicted or that, after considering all of that evidence and the inferences drawn therefrom, no reasonable fact finder would find the petitioner guilty of the crime.

The judgment is affirmed.

In this opinion the other judges concurred.