JUAN VAZQUEZ *v.* COMMISSIONER
OF CORRECTION
(AC 31971)

DiPentima, C. J., and Lavine and Flynn, Js.

Argued January 5—officially released May 10, 2011

*Heather Golias*, special public defender, for the appellant (petitioner).

*Rocco A. Chiarenza*, deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, J. The petitioner, Juan Vazquez, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court abused its discretion in denying certification to appeal and that it erred in (1) denying his motion to order disclosure of the medical records of trial counsel, (2) finding that he had failed to show that trial counsel

provided per se ineffective assistance during jury selection under *United States* v. *Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), or, in the alternative, that he had failed to show deficient performance and prejudice under *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and (3) finding that he was not actually innocent based on the testimony of two eyewitnesses. We dismiss the petitioner's appeal.

The facts giving rise to this case are set forth in *State* v. *Vazquez*, 79 Conn. App. 219, 830 A.2d 261, cert. denied, 266 Conn. 918, 833 A.2d 468 (2003). "On the night of July 29, 1996, John Townsend, the victim, and John Okon went to a bar in Southington for a few drinks. At around midnight, the two decided to pool their money and attempt to buy some cocaine. They then drove to a housing project on Willow Street in New Britain. Okon remained in the car as the victim got out and approached some men to ask where cocaine might be purchased. After some discussion, the victim returned to the car with the cocaine. As they began to drive off, something hit the car, and the victim instructed Okon, who was driving, to stop. The victim exited the car to investigate. Moments later, Okon heard a shot, got out of the car and saw the victim lying on the ground, dead. Okon drove away from the scene until he found a police officer to whom to report the event. At trial, in August, 2001, the state called, inter alios, two witnesses, Madelyn Cruz and Sheila Calderon, who claimed to have seen the [petitioner] shoot the victim in the head and then flee the scene. The [petitioner] also testified." Id., 221. After a trial to the jury, the petitioner was convicted of murder in violation of General Statutes § 53a-54a, and conspiracy to commit murder in violation of General Statutes §§ 53a-54a and 53a-48. The court thereafter sentenced the petitioner

to a total effective term of sixty years imprisonment.[1] The petitioner's conviction was upheld on appeal. Id.

On February 27, 2009, the petitioner filed a second amended petition for a writ of habeas corpus, alleging that his trial counsel, Donald Cardwell and Nicholas Cardwell, had rendered ineffective assistance in several respects.[2] Following a habeas trial, the court rejected the petitioner's ineffective assistance of counsel claims and denied the petition. Subsequently, the court also denied the petition for certification to appeal. This appeal followed.

We begin by setting forth the standard of review and legal principles that guide our resolution of the petitioner's appeal. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an

[1] The petitioner was sentenced to sixty years incarceration on the murder conviction and twenty years on the conspiracy to commit murder conviction, concurrent to the sentence for murder, for a total effective sentence of sixty years incarceration. We note that the habeas court's memorandum of decision incorrectly stated that the sentences were consecutive. The error is not the subject of this appeal and has no bearing on its disposition.

[2] Specifically, the petitioner raised three grounds for relief: (1) his trial counsel, Donald Cardwell, diagnosed with a brain tumor before trial, provided ineffective assistance of counsel on the first two days of jury selection, (2) his trial counsel, Nicholas Cardwell, who took over for Donald Cardwell, provided ineffective assistance of counsel when he cross-examined the state's two eyewitnesses and failed to call material witnesses for the defense, and (3) he was actually innocent of the charges of murder and conspiracy to commit murder based on new evidence that the two eyewitnesses had recanted their testimony. The court rejected all of the petitioner's ineffective assistance claims. In this appeal, however, the petitioner does not challenge the court's ruling concerning the effectiveness of Nicholas Cardwell.

abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 121 Conn. App. 240, 243–44, 994 A.2d 685, cert. denied, 297 Conn. 926, 998 A.2d 1193 (2010). "The required determination may be made on the basis of the record before the habeas court and the applicable legal principles. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits." (Citation omitted, internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 592–93, 940 A.2d 789 (2008).

"We examine the petitioner's underlying claim[s] of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *J. R.* v. *Commissioner of Correction*, 105 Conn. App. 827, 831, 941 A.2d 348, cert. denied, 286 Conn. 915, 945 A.2d 976 (2008).

"In *Strickland* v. *Washington*, [supra, 466 U.S. 687], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . . Accordingly, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim. . . .

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Citations omitted, internal quotation marks omitted.) *Griffin* v. *Commissioner of Correction*, 98 Conn. App. 361, 365–66, 909 A.2d 60 (2006).

I

The petitioner first claims that the court improperly denied his motion to order disclosure of the medical records of trial counsel, Donald Cardwell, who represented him during two days of jury selection after being diagnosed with a brain tumor. The petitioner claims entitlement to Donald Cardwell's medical records pursuant to Practice Book §§ 13-2 and 13-11A. The petitioner sought access to the medical records for the purpose of assisting in his claim that during jury selection, Donald Cardwell failed to provide competent assistance of counsel. In response, the respondent, the commissioner of correction, argues that the petitioner's claim is unreviewable because in his motion to order disclosure of the medical records at the habeas trial, he did not cite any authority entitling him to such records. The respondent also argues, alternatively, that the petitioner's claim must fail because the rules in chapter 13 of the Practice Book that the petitioner relies on in support of his claim on appeal are inapplicable to habeas matters pursuant to Practice Book § 23-38. The respondent further argues that even if the medical records were subject to discovery, the habeas court did not abuse its discretion in denying the petitioner's motion for disclosure because the medical records were not material to the subject matter involved, were privileged and were not within the possession or control of the respondent and did not fall within the scope of discovery rules, and, thus, were not subject to discovery.

The following additional facts are relevant to our resolution of the petitioner's claim. Attorney Donald Cardwell represented the petitioner during the pretrial proceedings and some of the jury selection. On June 18 and 20, 2001, Donald Cardwell appeared before the court on behalf of the petitioner for the purposes of jury selection. Attorney Nicholas Cardwell assumed

representation of the petitioner for the remaining jury selection and represented him through the criminal trial. Nicholas Cardwell's representation is not challenged in this appeal.

On June 20, 2006, the petitioner moved the habeas court to order the disclosure of Donald Cardwell's medical records for his inspection prior to trial. The respondent objected on the grounds that General Statutes § 52-146o barred such disclosure, in a civil proceeding, absent express consent by the patient or his authorized representative, and Donald Cardwell's authorized representative, his widow and executrix, Joan Wentworth, refused to provide such consent. At the hearing on the motion, the petitioner argued that he needed Donald Cardwell's medical records to establish that his medical condition had an impact on his practice and ability to practice law. The habeas court, *Fuger, J.,* denied the motion seeking medical records without prejudice on the grounds that it did not find that these medical records would produce relevant testimony and that the statutes barring release of medical records did not merit being overridden. The petitioner renewed his motion for the medical records at the conclusion of the evidence at the habeas trial, and the habeas court, *T. Santos, J.,* denied the renewed motion.

The petitioner sets forth two arguments in support of his claim that the habeas court erred when it denied his motion to order disclosure of the medical records of Donald Cardwell. The petitioner argues for the first time on appeal that the court's holding, both on the original motion and as adopted in the renewed motion,[3] that Donald Cardwell's medical records would not produce relevant testimony, was contrary to Practice Book

---

[3] Although there is no evidence in the record to show that Judge Santos adopted Judge Fuger's decision, it is nonetheless the petitioner's claim that she did. See part I of this opinion.

§ 13-2.[4] The petitioner next argues that he showed good cause for the disclosure of the requested medical records and is therefore entitled to the medical records under Practice Book § 13-11A.[5] Specifically, the petitioner argues that the habeas court's holding that § 52-146o did not merit being overridden was contrary to Practice Book § 13-11A, which provides the court with authority to "order a party to provide a written authorization sufficient to comply with the provisions of the Health Insurance Portability and Accountability Act" on a showing of good cause. Both of the petitioner's arguments must fail.

In the motion that he filed in the habeas court for disclosure of the medical records of Donald Cardwell, the petitioner failed to cite any authority in support of his claim of entitlement to those records. The petitioner raises for the first time on appeal the claim that he was entitled to the medical records under Practice Book §§ 13-2 and 13-11A. Whether the habeas court's ruling

[4] Practice Book § 13-2 provides in relevant part: "In any civil action, in any probate appeal, or in any administrative appeal where the judicial authority finds it reasonably probable that evidence outside the record will be required, a party may obtain in accordance with the provisions of this chapter discovery of information or disclosure, production and inspection of papers, books or documents material to the subject matter involved in the pending action, which are not privileged, whether the discovery or disclosure relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, and which are within the knowledge, possession or power of the party or person to whom the discovery is addressed. . . ."

[5] Practice Book § 13-11A provides: "The judicial authority may, on motion of a party and for good cause shown, order a party to provide a written authorization sufficient to comply with the provisions of the Health Insurance Portability and Accountability Act, as that act may from time to time be amended, to inspect and make copies of protected health information.

"The judicial authority may, on application of a party that is in compliance with the provisions of the Public Health Service Act and for good cause shown, order a party to provide a written authorization sufficient to comply with the provisions of said act, as that act may from time to time be amended, to inspect and make copies of alcohol and drug records that are protected by that act."

was contrary to Practice Book §§ 13-2 or 13-11A is immaterial to our conclusion that the habeas court did not err in denying the petitioner's motion for the medical records. Practice Book § 23-38 (b) clearly states that "[t]he provisions of [Practice Book] chapter 13, Discovery and Depositions of the rules of practice, do not apply to habeas corpus proceedings." The habeas court was not constrained by Practice Book §§ 13-2 or 13-11A in reaching its decision. We therefore need not further address the petitioner's arguments that the habeas court's ruling was contrary to Practice Book § 13-2 or that he was entitled to the medical records under Practice Book § 13-11A. Additionally, the habeas court never ruled on or decided the petitioner's entitlement to the records under those provisions. "This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled [on] and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 580, 941 A.2d 248 (2008); see also Practice Book § 60-5.

"Our standard of review of a challenge to a court's refusal to disclose privileged records is whether there was an abuse of discretion. . . . Our Supreme Court has stated that [a]ccess to confidential records should be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records. . . . Once the trial court has made its inspection, the court's determination of a defendant's access to the witness' records lies in the court's sound discretion, which we will not disturb unless abused." (Citation omitted; internal quotation marks omitted.) *State* v. *Martin M.*, 115 Conn. App. 166, 172–73, 971 A.2d 828, cert. denied, 293 Conn. 908, 978 A.2d 1112 (2009).

The petitioner first sought Donald Cardwell's medical records in a motion heard by Judge Fuger on July 7, 2006. Judge Fuger denied the motion without prejudice "on the grounds that [he did not] find that the medical records [would] produce relevant testimony and that the statute barring release of medical records, at [that] point, [did] not merit being overridden." His denial without prejudice permitted renewal of it. The petitioner did so before Judge Santos, who denied it on September 9, 2009, by an order made from the bench without articulating her ratiocination underlying the decision. It is Judge Santos' decision which is then the operative ruling on this issue. There was no articulation sought by the petitioner under Practice Book § 66-5.

Although the discovery provisions of chapter thirteen of the rules of practice do not apply as of right in habeas proceedings, the habeas court instead has discretionary authority concerning whether to order discovery. Practice Book § 23-38 (c) provides that "[u]pon motion, the judicial authority may order such other limited discovery as the judicial authority determines will enhance the fair and summary disposal of the case." Judge Santos denied the motion without making any factual findings in connection with it or giving any reasons for its denial. There is no record that Judge Santos adopted Judge Fuger's prior reasoning on the original motion, as the petitioner suggests. The burden of securing an adequate record for review rests with the petitioner. *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 176, 774 A.2d 148 (2001); see also Practice Book § 61-10. We therefore decline further review of this claim for that reason.

II

The petitioner next claims that the habeas court erred in finding that counsel's representation at jury selection was not per se ineffective, or, alternatively, that the

petitioner failed to show deficient performance and prejudice.

## A

We begin by addressing the petitioner's claim that the habeas court erred in finding that counsel's representation at jury selection was not *per se* ineffective. Specifically, the petitioner argues that the diagnosis of an incurable brain tumor shortly before jury selection deprived the petitioner of the effective assistance of counsel at voir dire, a critical stage of the proceedings, and, therefore, the petitioner need not show prejudice. See *United States* v. *Cronic*, supra, 466 U.S. 659 n.25.

In *United States* v. *Cronic*, supra, 466 U.S. 648, the United States Supreme Court recognized a narrow exception to the prejudice component of the *Strickland* test and held that, in certain limited circumstances, a presumption of prejudice applies to an ineffective assistance of counsel claim "when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate . . . ." Id., 659–60. The court went on to state that a showing of prejudice is not required when counsel is either totally absent or prevented from assisting the accused during a critical stage in the proceeding; id., 659 n.25; when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing" and when a defendant is "denied the right of effective cross-examination . . . ." (Internal quotation marks omitted.) Id., 659. "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." Id., 658.

The United States Court of Appeals for the Second Circuit has noted two very limited circumstances justifying a per se rule that a petitioner has been denied his right to the effective assistance of counsel: "where, unknown to the defendant, his or her counsel was, at the time of trial (1) not duly licensed to practice law because of a failure to ever meet the substantive requirements for the practice of law . . . or (2) implicated in the defendant's crimes . . . ." (Citations omitted.) *Bellamy* v. *Cogdell*, 974 F.2d 302, 306 (2d Cir. 1992) (en banc), cert. denied, 507 U.S. 960, 113 S. Ct. 1383, 122 L. Ed. 2d 759 (1993). Neither circumstance is suggested here in any way. Furthermore, *Bellamy* expressly states, in the context of an attorney illness, that "[p]er se rules should not be applied . . . in situations where the generalization is incorrect as an empirical matter; the justification for a conclusive presumption disappears when application of the presumption will not reach the correct result most of the time." (Internal quotation marks omitted.) Id., 308.

The following additional facts are relevant to our resolution of the petitioner's claim. The petitioner introduced a transcript from a grievance hearing concerning Donald Cardwell's professional conduct. The habeas court noted that at the grievance hearing, Nicholas Cardwell testified: "It is my recollection that by May or June [2001] [Donald Cardwell] was beginning to get things under control. He had no more seizures, because they were very small seizures, but these all stopped and he went back to fairly almost normal . . . ."

Citing *Bellamy* v. *Cogdell*, supra, 974 F.2d 308, the habeas court "agree[d] that there is simply nothing inherent in an attorney's illness that necessarily will impede a spirited defense most of the time to justify finding the attorney's representation per se ineffective. Rather, given the varying effects health problems can have on an individual's ability to function, claims of

ineffective assistance based on attorney illness are best suited to the fact-specific prejudice inquiry mandated by *Strickland*." (Internal quotation marks omitted.) The petitioner argues that his case falls outside of the ambit of " 'most of the time' . . . ." We disagree.

The habeas court found that although Donald Cardwell was being treated for a brain tumor at the time of jury selection, there is no evidence that his diagnosis affected his ability to effectively assist the petitioner in selecting jurors. That finding binds us unless the record shows it is clearly erroneous. See *J.R.* v. *Commissioner of Correction*, supra, 105 Conn. App. 831. The record shows that the court properly found that this is not a *Cronic* type of case. Here, counsel did not fall asleep or fail to function in voir dire. There is no mandatory inference that counsel was not able to discharge his duties. We agree with the court that the circumstances of the present case, particularly the record of Donald Cardwell's actual performance as more fully set forth in part II B of this opinion, do not warrant an application of the narrow exception recognized in *Cronic*.

B

Because we conclude that the two narrow exceptions to the two-pronged *Cronic* test are not applicable, we now turn to the petitioner's claim that the habeas court erred in finding that the petitioner failed to show deficient performance and prejudice. We are not persuaded by the petitioner's deficiency claims. In support of his claim that counsel's representation was deficient under *Strickland*, the petitioner argues that Donald Cardwell was confused about the use of peremptory challenges.

Specifically, the petitioner argues that Donald Cardwell, who had twenty-six years of legal experience, was confused on the first day of jury selection about the use of peremptory challenges. "After one juror was

accepted on the jury, [Donald Cardwell] inquired of the court:

" 'Cardwell: The weakest of the challenges just fold it into the—or just put them in?

" '[The] Court: Well, no. Use them any way you like.

" 'Cardwell: Any way you want. All right. Thank you.' "

The petitioner claims that this was a lapse of memory as to basic legal knowledge and was clearly caused by Donald Cardwell's medical condition.

The habeas court did not make a specific finding about that colloquy. However, it did find that "it is clear that although Donald Cardwell was being treated for a brain tumor at the time of jury selection, his diagnosis and treatment did not prevent him from effectively representing the petitioner." This court cannot find facts, and the challenged excerpt is so fragmentary that only resort to speculation could assign a reason to it. We do note, however, that courts often permit either the prosecutor or defense counsel to use their total number of peremptory challenges for both principal and alternate jurors as a lump allotment usable for either principals or alternates.

A peremptory challenge is one for which counsel need not give a reason unless, under *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), some improper racial motive is suspected and it is the attorney who, using the peremptory challenge, excuses the juror. Challenges for cause are asserted and permitted where the court views something in the voir dire which establishes that the prospective juror could not sit on the case fairly and impartially if seated. If the court agrees, it is the court that excuses such a venireperson from service, either on a challenge for cause by either counsel or on its own motion.

General Statutes § 54-82h (a) provides that when an accused is charged with a felony punishable by life imprisonment, such as murder in violation of § 53a-54a, and the court directs the selection of alternate jurors, defense counsel may exercise a total of eighteen peremptory challenges. Specifically, General Statutes §§ 54-82g[6] and 54-82h (a)[7] provide that defense counsel may exercise fifteen peremptory challenges for the principal jurors and three additional peremptory challenges if alternate jurors are selected.

Finally, as the record before the habeas court shows, Donald Cardwell challenged a prospective juror for cause who claimed that his prior experience working with the police on field investigations impacted his ability to serve fairly. When the court denied that challenge for cause after certain rehabilitory questions were asked, Donald Cardwell exercised a peremptory challenge, thus indicating that he knew the difference between a challenge for cause and a peremptory challenge and when the use of each is appropriate.

The petitioner also takes issue with another excerpt from the voir dire. He states in his brief: "As to another prospective juror who was accepted, Donald Cardwell explained the burden of proof as follows:

---

[6] General Statutes § 54-82g provides in relevant part: "The accused may challenge peremptorily, in any criminal trial before the Superior Court . . . for any offense punishable by imprisonment for life, fifteen jurors . . . ."

[7] General Statutes § 54-82h (a) provides in relevant part: "In any criminal prosecution to be tried to the jury in the Superior Court if it appears to the court that the trial is likely to be protracted, the court may, in its discretion, direct that, after a jury has been selected, two or more additional jurors shall be added to the jury panel, to be known as 'alternate jurors'. Such alternate jurors shall have the same qualifications and be selected and subject to examination and challenge in the same manner and to the same extent as the jurors constituting the regular panel, provided, in any case when the court directs the selection of alternate jurors, the number of peremptory challenges allowed shall be as follows: In any criminal prosecution the state and the accused may each peremptorily challenge . . . eighteen jurors if the offense is punishable by life imprisonment . . . ."

" 'Cardwell: . . . The defendant doesn't have to do a thing. He can fall asleep. If he does, I'll kick him or make sure he doesn't stay asleep. But the state has got the entire burden to put on the responsibility . . . .' "

However, the full record indicates that this excerpt was prefaced by the following language: "They've made the accusation. It's their job to prove it if they can."

The habeas court found, inter alia, that the questions Donald Cardwell asked about the burden of proof "were both relevant and appropriate." We agree. While Donald Cardwell did not resort to polysyllabic legalisms to explain the concept that it was not the defendant's burden to disprove the state's case, he adequately got that point across in language that was plain, if homespun.

The petitioner also claimed Donald Cardwell was ineffective in that he informed two jurors and another prospective juror who was accepted on the jury that he did not know if the petitioner would testify but that "most likely," he would not. The petitioner also asserts that Donald Cardwell had no tactical reason to so inform these jurors, particularly after he had explained to the panels that because he could not "anticipate what the state's case will be until the state's case is over, it is impossible for the defense to say now whether we will call any witnesses, and, if so, who they might be." The petitioner further asserts that because he did testify, it suggested to these jurors that the defense had not proceeded as planned.

The habeas court made no specific findings on the petitioner's claim. Because Donald Cardwell was dead by the time of the habeas trial, there was no opportunity to hear his testimony about what his purpose was in stating that the petitioner "most likely" would not testify in the criminal trial. We note, however, that this information was divulged to one juror in connection with

his voir dire concerning the state's obligation to prove its charge against the petitioner, not the defendant's job to disprove the state's case. The petitioner does not explain how he was harmed.

The petitioner, who bears a common Hispanic name, also takes issue with Donald Cardwell's exercise of a peremptory challenge to a prospective juror whom he questioned about ethnic bias, despite the venireperson's revelation that he had a Puerto Rican grandson. However, the record reveals that the juror recognized the names of two of the witnesses in the case.

The habeas court concluded that there was insufficient evidence that Donald Cardwell was ineffective in selecting a jury. The habeas court also found that "Donald Cardwell asked the prospective jurors similar questions on topics such as their ability to accord the petitioner a presumption of innocence, their ability to set aside their emotions, their understanding of the prosecution's burden of proving the petitioner's guilt beyond a reasonable doubt, their ability to assess a police officer's credibility without regard to the fact that he or she is a police officer, and whether the fact that the petitioner was Hispanic would affect their judgment. These questions were both relevant and appropriate. Furthermore, Donald Cardwell probed further when necessary." The habeas court properly focused on Donald Cardwell's actual performance.

Specifically, the habeas court found that "[a]lthough he was being treated for a brain tumor at the time of jury selection, there is no evidence that his diagnosis affected his ability to effectively assist the petitioner in selecting jurors." The habeas court found that Donald Cardwell's performance in selecting a jury was neither ineffective nor prejudicial. The petitioner has failed in his burden to show that either finding was clearly erroneous. "[T]here is a strong presumption that the trial

strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Citation omitted.) *Iovieno* v. *Commissioner* of *Correction*, 67 Conn. App. 126, 128, 786 A.2d 1113 (2001), cert. denied, 259 Conn. 916, 792 A.2d 851 (2002).

The trial court initially provided the petitioner with sixteen peremptory challenges. Because a number of selected jurors were lost prior to the start of the trial, the court stated that, if and when the petitioner exhausted his peremptory challenges, the court would "be charitable and grant further peremptory challenges, if there is a need." Even if we were to determine that there was sufficient evidence to support the petitioner's claim that counsel's performance was deficient, and we do not, the petitioner has failed to show harm because the petitioner exercised a total of only fifteen of his eighteen peremptory challenges. If Donald Cardwell used a peremptory challenge when he should have in fact used a challenge for cause, it is of no consequence to the petitioner because there were still three peremptory challenges left over in addition to a reassurance by the court to be lenient.[8]

We therefore reject the petitioner's claim on the ground that the petitioner has failed to show ineffectiveness and to satisfy the prejudice prong of *Strickland*.

### III

We next address the petitioner's claim that the court erred in finding that the petitioner was not actually innocent based on the testimony of two eyewitnesses.

---

[8] By statute, the defendant was entitled to eighteen peremptory challenges. "[W]hen the court directs the selection of alternate jurors . . . the state and the accused may each peremptorily challenge . . . eighteen jurors if the offense is punishable by life imprisonment . . . ." General Statutes § 54-82h (a). The petitioner exercised only a total of fifteen peremptory challenges. The petitioner, therefore, failed to exhaust all the peremptory challenges he had been allocated.

We begin by setting forth our standard of review. "[O]ur Supreme Court has deemed the issue of whether a habeas petitioner must support his claim of actual innocence with newly discovered evidence an open question in our habeas jurisprudence. . . . This court, nevertheless, has held that a claim of actual innocence must be based on newly discovered evidence. . . . [A] writ of habeas corpus cannot issue unless the petitioner first demonstrates that the evidence put forth in support of his claim of actual innocence is newly discovered. . . . This evidentiary burden is satisfied if a petitioner can demonstrate, by a preponderance of the evidence, that the proffered evidence could not have been discovered prior to the petitioner's criminal trial by the exercise of due diligence." (Citation omitted; internal quotation marks omitted.) *Gaston* v. *Commissioner of Correction*, 125 Conn. App. 553, 558–59, 9 A.3d 397 (2010), cert. denied, 300 Conn. 908, 12 A.3d 1003 (2011).

"[T]he proper standard for evaluating a freestanding claim of actual innocence . . . is twofold. First, the petitioner must establish by clear and convincing evidence that, taking into account all of the evidence— both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial— he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no reasonable fact finder would find the petitioner guilty of the crime." *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 747, 700 A.2d 1108 (1997). As to the clear and convincing evidence component, "[t]he clear and convincing standard of proof is substantially greater than the usual civil standard of a preponderance of the evidence, but less than the highest legal standard of proof beyond a reasonable doubt. It is sustained if the evidence induces in the mind of the trier a reasonable

belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . We have stated that the clear and convincing standard should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory." (Internal quotation marks omitted.) *In re Dylan C.*, 126 Conn. App. 71, 87, 10 A.3d 100 (2011). Under the second prong, the petitioner must establish that "no reasonable fact finder, considering all of the evidence in the same way that the habeas court considered it, and drawing the same inferences that the habeas court drew, would find the petitioner guilty of the crime of which he stands convicted." *Miller* v. *Commissioner of Correction*, supra, 800.

The petitioner asserts that his claim of actual innocence, upon review of the entire record, is supported by substantial evidence despite the habeas court's finding that the testimony of the two witnesses who provided the "newly discovered evidence" was not credible. We are not persuaded.

The newly discovered evidence consisted of the testimony of Luis Lebron, Cruz' brother, to the effect that Cruz admitted to him after the petitioner's criminal trial that she had lied, and the testimony of Calderon that she, too, had lied to the police because they had threatened her. The habeas court found that the evidence was newly discovered because it could not have been discovered prior to the petitioner's criminal trial, as it consisted of statements made after the conclusion of the criminal trial. The habeas court, however, discredited the newly discovered evidence proffered by the petitioner, specifically, the testimony of Lebron and inconsistent testimony of Calderon.

At the habeas trial, Lebron testified that Cruz visited him in jail after the petitioner's murder trial and confessed that she had lied in her testimony at the underlying criminal trial, that she did not see the shooting, and that the police had threatened to take away her children if she did not implicate the petitioner. The habeas court did not find his testimony to be credible. Also at the habeas trial, "Cruz stood by her trial testimony [that she observed the petitioner shoot the victim in the head] and denied telling Lebron that she had lied because the police had threatened to take her children away." The habeas court did not find Lebron's testimony to be credible and credited the testimony of Cruz. In support of its credibility determination, the habeas court noted that Lebron was convicted of manslaughter and sentenced to thirty years of imprisonment, and also had convictions for tampering with a witness, assault in the first and second degree and for selling narcotics. "This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *Elsey* v. *Commissioner of Correction,* 126 Conn. App. 144, 153, 10 A.3d 578, cert. denied, 300 Conn. 922, 14 A.3d 1007 (2011). The habeas court credited Cruz' testimony that she observed the petitioner shoot the victim in the head. Thus, the petitioner has not met his burden in establishing that "no reasonable fact finder . . . would find the petitioner guilty of the crime of which he stands convicted." *Miller* v. *Commissioner of Correction,* supra, 242 Conn. 800.

At the habeas trial, Calderon testified "that she had taken acid on the night of the shooting, that the police told her that she would go to jail if she did not admit to being at the scene of the crime and if she did not give them a statement, that the police coached her in

giving her statement, that she did not know what really happened that night because she was high and that she read through her police statement prior to testifying at the criminal trial." The habeas court found Calderon's exculpatory habeas testimony to be incredible. Specifically, the habeas court found that "it is more likely than not that Calderon was motivated to testify as she did at the habeas trial because of the pressure that she has been under by people on the street and the petitioner's family to change her story."

The habeas court found that the petitioner's newly discovered evidence essentially consisted of additional impeachment evidence of the trial testimony of Cruz and Calderon. We agree. The habeas court stated that "[the petitioner's] effort to show that he is actually innocent ultimately amounts to no more than a reemphasis of the inconsistencies in the testimony of the eyewitnesses." The habeas court properly found that the petitioner's newly discovered evidence, consisting of the testimony of Lebron and Calderon, failed to establish his actual innocence by clear and convincing evidence because this standard "forbids relief whenever the evidence is loose, equivocal or contradictory." (Internal quotation marks omitted.) *Miller* v. *Commissioner of Correction*, supra, 242 Conn. 795. The petitioner provided no other evidence to support his claim of actual innocence.

Based on the record before us, the habeas court properly concluded that the petitioner had not established by clear and convincing evidence that he is innocent of the murder for which he was convicted, nor had he established that no reasonable fact finder would find him guilty of the crime.

IV

The petitioner also claims that the court abused its discretion in denying his petition for certification to

appeal with respect to each of the aforementioned claims of error. For the reasons provided in parts I, II and III of this opinion, we conclude that the habeas court did not abuse its discretion in denying certification to appeal. We are not persuaded that the issues, as presented by the petitioner, were debatable among jurists of reason, that they could reasonably have been resolved differently, or that they raised questions deserving further appellate scrutiny. See *Harris* v. *Commissioner of Correction*, supra, 121 Conn. App. 243–44. We conclude that the court properly denied the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.