TROY HARRIS *v.* COMMISSIONER OF CORRECTION
(AC 33704)

DiPentima, C. J., and Sheldon and Foti, Js.

Argued October 16—officially released December 3, 2013

*William A. Snider*, assigned counsel, for the appellant (petitioner).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David Clifton*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

SHELDON, J. The petitioner, Troy Harris, appeals from the dismissal of his second postconviction petition for a writ of habeas corpus, in which he has challenged his conviction of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a, and assault in the first degree in violation of General Statutes § 53a-59 (a) (5) on the ground of ineffective assistance of counsel. In support of his first habeas petition, the petitioner alleged that he received ineffective assistance of counsel in his underlying criminal trial. In support of his second habeas petition, the petitioner alleged ineffective assistance of counsel in his first postconviction habeas corpus proceeding, where he initially sought to challenge his attempted murder and first degree assault conviction on the ground of ineffective assistance of counsel. The petitioner's claim of ineffective assistance of counsel in his underlying criminal trial is based upon the alleged failure of trial counsel, Robert Berke, to

investigate all possible exculpatory and/or alibi witnesses prior to that trial. The petitioner's claim of ineffective assistance of counsel in his first habeas proceeding is based upon the failure of his first habeas counsel, Justine Miller: (1) to call Tammi Jamison, one of the state's chief witnesses against him in his underlying criminal trial, to testify in his favor at the habeas trial; (2) to subpoena Jamison's psychiatric records to the habeas trial; and (3) to subpoena certain other alibi witnesses to testify in support of his defense of alibi at the habeas trial.

On June 7, 2011, after hearing two days of evidence from three witnesses—the petitioner, Jamison, and Miller—the second habeas court, *T. Santos, J.,* dismissed the second habeas petition upon concluding that the petitioner had failed to prove that his first habeas counsel's performance was constitutionally deficient, as required to establish ineffective assistance of counsel under *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). For the following reasons, we agree with the second habeas court that the petitioner failed to prove that the performance of his first habeas counsel was constitutionally deficient, and thus, we conclude that the judgment of that court, dismissing the petitioner's second habeas petition, must be affirmed.

The petitioner's current claims arise against the background of the following procedural history and facts, as described by this court in reviewing the petitioner's underlying conviction on direct appeal. "On May 16, 2000, John Simpson drove Howard Dozier and Hector Quinones to Washington Street in Waterbury to pick up Ray Ramos. At that time, the [petitioner] was residing at 39 Washington Street with Tammi Jamison, the mother of his child. Simpson stopped the vehicle he was driving on Washington Street in a driveway between the [petitioner's] house and the house where they were

picking up Ramos, and all three men exited the car. Dozier walked up the street and encountered the [petitioner] standing on his porch at 39 Washington Street. Dozier and the [petitioner] had a brief conversation. As Dozier turned his back to the [petitioner] in an attempt to return to the vehicle in which he had arrived, the [petitioner] began firing an Uzi machine gun at Dozier. Dozier ran back to the vehicle and he and Simpson drove off. The [petitioner] continued to fire at the vehicle, and Simpson, who was driving, was shot in his neck.

"The [petitioner] was tried to a jury, which found him guilty of attempting to murder Simpson and Dozier, as well as the first degree assault on Simpson. The [petitioner] received a total effective sentence of forty years imprisonment." (Footnote omitted.) *State* v. *Harris*, 85 Conn. App. 637, 639–40, 858 A.2d 284, cert. denied, 272 Conn. 901, 863 A.2d 695 (2004).

Following the affirmance of his conviction on direct appeal, the petitioner filed his first postconviction petition for a writ of habeas corpus. In that petition, the petitioner challenged his underlying conviction on the ground of ineffective assistance of counsel. At the trial on that petition, where the petitioner was represented by Miller, he sought to prove that his trial counsel, Berke, had been ineffective in failing properly to investigate all possible exculpatory and/or alibi witnesses who might have supported his defense at trial. *Harris* v. *Commissioner of Correction*, 121 Conn. App. 240, 243, 994 A.2d 685, cert. denied, 297 Conn. 926, 998 A.2d 1193 (2010). The habeas court rejected that claim in a written memorandum of decision, wherein it denied the petitioner's first habeas petition upon concluding that the petitioner had failed to prove that his trial counsel's performance had been constitutionally deficient.

In reviewing the petitioner's appeal from the denial of his first habeas petition following the denial of his

petition for certification to appeal, this court described the habeas court's relevant factual findings and legal conclusions as follows: "In its memorandum of decision, the court concluded that Berke did not render ineffective assistance of counsel and that his failure to call several individuals as alibi witnesses at the criminal trial was a valid strategic decision. The court credited Berke's testimony that he tried to discourage the petitioner from testifying at the criminal trial but that the petitioner wanted to testify regardless of whether the alibi witnesses did so. The petitioner's testimony differed from that which would have been offered by the putative alibi witnesses. The court noted that as conflicting as the petitioner's own versions of his alibi were, the addition of alibi witnesses would likely have made matters worse for the petitioner. The court thereafter denied his petition for certification." Id.

In his appeal from the denial of his first habeas petition, the petitioner made three arguments to this court. First, he claimed that, when deciding his claim of ineffective assistance of counsel, the habeas court improperly had applied the presumption of attorney competence set forth in *Strickland* v. *Washington,* supra, 466 U.S. 688. Second, he claimed that the habeas court improperly had defined the concept of exculpatory evidence, thereby, assertedly, making it futile for him to present evidence regarding the psychiatric history of Jamison, which Berke had failed to elicit during trial. Third, he claimed that the court improperly avoided certain ethical issues when determining that Berke's decision not to present alibi witnesses at the trial had been a strategic decision. See *Harris* v. *Commissioner of Correction,* supra, 121 Conn. App. 242. This court was not persuaded by the petitioner's arguments, and thus ordered that his appeal from the denial of his first habeas petition be dismissed.

Following that dismissal, the petitioner filed the instant petition for a writ of habeas corpus, which, as later amended, alleged that his first habeas counsel, Miller, had been ineffective because: (1) "[she] failed to call Tammy Jamison who would recant her trial testimony and say that [the petitioner] did not shoot the victims"; (2) "[she] did not subpoena Jamison's medical records which document[ed] her mental disorder"; and (3) "[she] did not subpoena alibi witnesses to testify at the habeas trial." The second habeas trial took place over two days, on May 31 and June 7, 2011, on which, to reiterate, the petitioner presented testimony from himself, Jamison, and Miller. On June 7, 2011, following the presentation of evidence and closing arguments, the court, *T. Santos, J.*, issued a decision from the bench, in which it dismissed the petition upon finding that the petitioner had failed to meet his burden of proving, under the first prong of *Strickland*, that Miller's performance was ineffective. Based upon the court's finding that the petitioner had failed to establish the performance prong of *Strickland*, it did not reach the prejudice prong of *Strickland*. On June 8, 2011, the petitioner filed a petition for certification to appeal from the dismissal of his amended second petition for a writ of habeas corpus, which was granted on June 16, 2011. This appeal followed. Additional facts will be set forth as necessary.

"In *Strickland* v. *Washington*, [supra, 466 U.S. 687], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a

breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, 128 Conn. App. 425, 430, 17 A.3d 1089, cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011).

"To satisfy the performance prong [of the *Strickland* test] the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*, 130 Conn. App. 291, 294–95, 21 A.3d 969, cert. denied, 302 Conn. 926, 28 A.3d 337 (2011). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Orellana* v. *Commissioner of Correction*, 135 Conn. App. 90, 98, 41 A.3d 1088, cert. denied, 305 Conn. 913, 45 A.3d 97 (2012).

"As applied to a claim of ineffective assistance of prior habeas counsel, the *Strickland* standard requires the petitioner to demonstrate that his prior habeas counsel's performance was ineffective and that this ineffectiveness prejudiced the petitioner's prior habeas proceeding. Thus . . . the petitioner will have to prove that . . . prior habeas counsel, in presenting his claims, was ineffective and that effective representation by habeas counsel establishes a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . ." (Internal quotation marks omitted.) *Williams*

v. *Commissioner of Correction*, 133 Conn. App. 96, 101–102, 33 A.3d 883, cert. denied, 303 Conn. 941, 37 A.3d 153 (2012).

"In a habeas appeal, although this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Griffin* v. *Commissioner of Correction*, 119 Conn. App. 239, 241, 987 A.2d 1037, cert. denied, 295 Conn. 912, 989 A.2d 1074 (2010). With the foregoing principles in mind, we now address the merits of the petitioner's claim.

We begin with the petitioner's claim that Miller's representation was ineffective because she failed to call Jamison as a witness and to subpoena her psychiatric records at the first habeas trial.[1] The following additional facts, adduced at the petitioner's second habeas trial, are relevant to our resolution of this claim.

Miller and the petitioner met in person at the correctional facility at which the petitioner was housed to discuss potential issues to be raised in his first habeas

---

[1] In his amended petition for a writ of habeas corpus, the petitioner also asserted that Miller was ineffective because she "did not subpoena alibi witnesses to testify at the habeas trial." To the contrary, Miller subpoenaed three alibi witnesses to the habeas trial who indeed did testify that the petitioner was in Ansonia, not in Waterbury, on the night in question. Jamison, who admittedly would not have recanted her testimony from the criminal trial, would not have aided the petitioner's alibi defense and thus, Miller's decision not to call her as an alibi witness at the habeas trial did not constitute ineffective assistance of counsel. The habeas court found that "there really is no claim that there were no alibi witnesses called" because indeed Miller called three alibi witnesses, and thus, it was not "proven by the petitioner that any of the decisions made by Ms. Miller during her presentation at the habeas trial were at all unprofessional or ineffective." We agree with the habeas court's factual determination that there was no merit to the petitioner's claim that Miller was ineffective by failing to call certain alibi witnesses at the habeas trial.

petition. After that meeting, Miller decided that the focus of the petition should be on trial counsel's failure to investigate potential alibi witnesses. Miller testified at the second habeas trial that she believed this strategy was "solid" because Berke had failed to call most of the alibi witnesses at the petitioner's criminal trial. Miller spent considerable time bringing the alibi witnesses to court for the first habeas trial and hired a private investigator to interview these witnesses before they testified. Each such alibi witness, except Jamison, all of whom who had been subpoenaed to the habeas trial by Miller, testified at the trial that the petitioner was in Ansonia on the night in question, not in Waterbury, where the shooting took place.

Miller also subpoenaed Jamison, who had been interviewed by a private investigator, Gregory Senick, prior to the habeas trial. Jamison had told Senick that she wanted to recant her testimony from the petitioner's criminal trial, where she had stated that the petitioner was at her apartment in Waterbury at the time of the shooting and that she had seen him take a gun from the ceiling of the bathroom and take it outside of the apartment. Based on Senick's report of the interview, Miller planned to call Jamison to testify at the habeas trial to recant her prior testimony at the criminal trial. With that plan in mind, Miller decided not to subpoena Jamison's psychiatric records to the habeas trial, for such records, if disclosed, might undermine the reliability of the expected retraction of her trial testimony. Miller testified at the second habeas trial that she did not subpoena the records because "right up until eight days before we went to trial, Ms. Jamison was gonna come in and testify and help [the petitioner]," and thus she "didn't want to impeach her own witness" or "have anything to do with anything that could put [Jamison's] abilities into question." Additionally, Miller believed that it would be legally impossible for her to obtain

Jamison's psychiatric records for use in a civil habeas proceeding without Jamison's consent.

On April 21, 2008, however, one week before the start of the petitioner's first habeas trial, Miller received an e-mail from another investigator from Senick's office, advising her that Jamison no longer wanted to recant her testimony from the criminal trial, and that she "was not going to be cooperative in terms of doing that." Miller testified at the petitioner's second habeas trial that, "in spite of the second e-mail," she "nevertheless subpoenaed Ms. Jamison" to testify at the first habeas trial. On the morning of the first habeas trial, however, Miller spoke with Jamison and found her to be "extremely, extremely upset . . . [and] hostile." Based on her interaction with Jamison on the morning of the first habeas trial, Miller "decided that there would be no way that [Jamison] could possibly help [the petitioner] because she more or less indicated . . . that if [she] called her to testify, that she would—wanted nothing to do with him and would do everything not to help him. So, [Miller] figured [she]'d better leave [Jamison] alone."

With regard to her decision not to subpoena Jamison's psychiatric records, Miller testified that, "[w]hether or not she had any mental issues at that point, I don't think would have necessarily gone to show that she had mental issues back in the year 2000 when this underlying crime that gave rise to the criminal trial occurred. So, in other words, I wouldn't have used [her psychiatric records] because it really didn't make a difference what her mental state was in 2008 because I guess the issue was her mental state at the time the crime was committed." Moreover, Miller testified that at the first habeas trial, she had questioned the petitioner's criminal trial counsel, Berke, about the existence of Jamison's psychiatric records, to which Berke had

responded that he had attempted to obtain such records from institutions but was advised that none existed.

"[T]here is a strong presumption that the trial strategy employed by a [habeas petitioner]'s counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Citation omitted.) *Iovieno* v. *Commissioner of Correction*, 67 Conn. App. 126, 128, 786 A.2d 1113 (2001), cert. denied, 259 Conn. 916, 792 A.2d 851 (2002). "[C]ounsel will be deemed ineffective only when it is shown that a [petitioner] has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial." *State* v. *Talton*, 197 Conn. 280, 297, 497 A.2d 35 (1985). "[O]ur habeas corpus jurisprudence reveals several scenarios in which courts will not second-guess [habeas] counsel's decision not to investigate or call certain witnesses or to investigate potential defenses, such as when . . . counsel learns of the substance of the witness' testimony and determines that calling that witness is unnecessary or potentially harmful to the case . . . ." (Footnote omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 681–82, 51 A.3d 948 (2012). Further, "[t]he failure of [habeas] counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Dunkley* v. *Commissioner of Correction*, 73 Conn. App. 819, 824, 810 A.2d 281 (2002), cert. denied, 262 Conn. 953, 818 A.2d 780 (2003).

Turning first to the performance prong of *Strickland*, we conclude that the second habeas court's finding that Miller's decisions not to call Jamison as a witness or to subpoena her psychiatric records were reasonable

exercises of professional judgment was not clearly erroneous. The petitioner has not demonstrated that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 680. The petitioner has failed to prove that either calling Jamison as a witness or subpoenaing her psychiatric records would have supported the claims presented in his habeas appeal. Rather, the habeas court found that the evidence presented to it tended to show that such testimony and evidence would not have helped the petitioner's case in any way. Miller considered the fact that if Jamison were called as a witness, her testimony would not help the petitioner's case because she would not recant her testimony from the criminal trial. Therefore, Miller decided that calling Jamison as a witness would not be helpful in establishing the petitioner's alibi defense. The petitioner has not demonstrated that such investigation and trial strategy by Miller was an unreasonable exercise of professional judgment, and we will not second-guess Miller's decision not to call Jamison based on her knowledge of the substance of Jamison's testimony and her determination that such testimony would have been harmful to the petitioner's case.

With regard to Jamison's psychiatric records, the habeas court found that Miller reasonably relied upon her questioning of Berke at the first habeas trial, in which he stated that he attempted to obtain Jamison's records, but that none existed. The court also found that Miller reasonably decided that such records would not aid in the petitioner's defense because Jamison's mental state in 2008 had no bearing on her mental state at the time of the alleged crime in 2000. The court further concluded that, "it has not been proven by the petitioner that [the records] existed at all," and that

the testimony of Jamison about her one day stay at Waterbury Hospital in 1999 would not "have been very helpful at all to the petitioner." It was also reasonable that Miller did not want to impeach her own witnesses by calling into question Jamison's credibility through the introduction of her psychiatric records. Recognizing that there is a strong presumption that the strategy employed by habeas counsel is reasonable and is a result of the exercise of professional judgment, we conclude that the petitioner has not demonstrated that the habeas court's determination that Miller did not perform deficiently by not subpoenaing Jamison's psychiatric records was improper.

We further conclude that the habeas court properly found that Miller's performance was not deficient under the first prong of *Strickland*. The court found that Miller "reasonably" decided not to call Jamison in light of the reports presented by the private investigators and based on her interaction with Jamison on the morning of the habeas trial. The court also found that it was reasonable for Miller not to have subpoenaed Jamison's psychiatric records, if they even exist, because such records would not benefit the petitioner's claim and would cause Miller to impeach her own witness. The record reveals that there is little uncertainty that Miller, for strategic and tactical reasons, elected not to call Jamison as a witness or subpoena her psychiatric records. Because the petitioner has failed to establish the first prong of the *Strickland* test, the performance prong, we need not reach the second prong of that test, the prejudice prong. For the foregoing reasons, we conclude that the court's dismissal of the petitioner's claim was proper.

The judgment is affirmed.

In this opinion the other judges concurred.