******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TROY HARRIS *v.* COMMISSIONER OF
CORRECTION
(AC 41036)

Lavine, Elgo and Bishop, Js.

*Syllabus*

The petitioner, who had been convicted of the crimes of attempt to commit
murder and assault in the first degree in connection with a shooting
incident, filed a third petition for a writ of habeas corpus, claiming that
he had received ineffective assistance of counsel from V, who had
represented him with respect to his second petition for a writ of habeas
corpus. Specifically, the petitioner alleged that V was ineffective for
failing to show that his first habeas counsel was ineffective for failing
to show that his trial attorney rendered ineffective assistance of counsel
for failing to obtain psychiatric records of one of the state's witnesses,
J. The habeas court rendered judgment denying the habeas petition
and, thereafter, denied the petition for certification to appeal, and the
petitioner appealed to this court. *Held* that the habeas court did not
abuse its discretion in denying the petition for certification to appeal,
the petitioner having failed to demonstrate that his prior habeas and
trial counsel were ineffective; the petitioner produced no evidence that
J would have, at the time of trial, consented to a review of her records,
especially given that J testified at the habeas trial that she would not
sign a release for her records because she was afraid that evidence of
her mental health would be used against her in custody disputes, and,
therefore, the petitioner had failed to demonstrate that his claim of
ineffective assistance of habeas and trial counsel was adequate to
deserve encouragement to proceed further.

Argued April 17—officially released July 16, 2019

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Sferrazza, J.*; judgment
denying the petition; thereafter, the court denied the
petition for certification to appeal, and the petitioner
appealed to this court; subsequently, the court, *Sferrazza, J.*, denied the petitioner's motion for articulation;
thereafter, this court granted the petitioner's motion
for review but denied the relief requested therein.
*Appeal dismissed.*

*Deren Manasevit*, assigned counsel, for the appellant (petitioner).

*Laurie N. Feldman*, special deputy assistant state's
attorney, with whom, on the brief, were *Maureen Platt*,
state's attorney, and *Marc G. Ramia*, senior assistant
state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Troy Harris, appeals from the habeas court's denial of his petition for certification to appeal from its judgment denying his third petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal and improperly concluded that the petitioner's prior habeas and trial counsel were not ineffective for failing to obtain the psychiatric records of one of the state's witnesses, Tammy Jamison. We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal and, accordingly, dismiss the petitioner's appeal.

This is the fourth time that the petitioner has been before this court. The following facts, as this court summarized on direct appeal, and procedural history, as articulated by this court on the petitioner's second habeas appeal, are relevant to our resolution of the issues in the present appeal. "On May 16, 2000, John Simpson drove Howard Dozier and Hector Quinones to Washington Street in Waterbury to pick up Ray Ramos. At that time, the [petitioner] was residing at 39 Washington Street with . . . Jamison, the mother of his child. Simpson stopped the vehicle he was driving on Washington Street in a driveway between the [petitioner's] house and the house where they were picking up Ramos, and all three men exited the car. Dozier walked up the street and encountered the [petitioner] standing on his porch . . . . Dozier and the [petitioner] had a brief conversation. As Dozier turned his back to the [petitioner] in an attempt to return to the vehicle in which he had arrived, the [petitioner] began firing an Uzi machine gun at Dozier. Dozier ran back to the vehicle and he and Simpson drove off. The [petitioner] continued to fire at the vehicle, and Simpson, who was driving, was shot in his neck.

"The [petitioner] was tried to a jury, which found him guilty of attempting to murder Simpson and Dozier, as well as the first degree assault on Simpson. The [petitioner] received a total effective sentence of forty years imprisonment." (Footnotes omitted.) *State* v. *Harris*, 85 Conn. App. 637, 639–40, 858 A.2d 284, cert. denied, 272 Conn. 901, 863 A.2d 695 (2004).

Jamison, Simpson, and Dozier testified at the petitioner's underlying criminal trial. "Jamison testified that she and the [petitioner] lived together at the address where the shooting took place, and that, on the night of the shooting, she saw the [petitioner] leave their apartment with a machine gun that she had seen in his possession approximately one month earlier. . . . [S]he looked down from the second floor window and saw the tip of the gun, a person across the street and shots fire out of the gun. . . . [A]fter the shooting, the

[petitioner] came back upstairs carrying the gun and . . . [Jamison] and the [petitioner] wrapped it in a shirt and placed it inside a book bag. . . . [S]he then left the apartment with the gun and went to her aunt's house, where she hid the gun inside a grill. . . . [A]t the [petitioner's] request, she gave the gun to Dontae Stallings, a friend of the [petitioner] who lived in their building. Jamison also revealed that she was incarcerated after pleading guilty to charges of hindering prosecution for hiding the [gun]. [Moreover], Jamison testified that the [petitioner] told her that he fired the gun from the porch and that there was no question in her mind that . . . [he] fired the gun from her porch." (Footnotes omitted.) Id., 653–54.

"Dozier testified that he knew the [petitioner] from previous encounters . . . . [H]e and the [petitioner] previously had engaged in face-to-face disagreements. . . . [O]n the night of the shooting, he was having a conversation with the [petitioner] when the [petitioner] pulled out a gun from behind his leg. . . . [W]hen he saw the [petitioner] raise the gun, he turned and ran toward the vehicle Simpson was driving, and then shots were fired. . . . [H]e did not see anyone else with a gun besides the [petitioner]. . . .

"Simpson testified that he had a conversation with the [petitioner] immediately before the shots were fired. . . . [H]e saw the [petitioner] on his porch, holding a gun, and was assured by the [petitioner] that he was 'straight' when he asked the [petitioner] if he was going to shoot him. Simpson further testified that he saw the [petitioner] fire the gun at Dozier as he ran down the street." Id., 652–53.

On direct appeal, this court determined that "the state's case was overwhelmingly strong. This was not merely a credibility contest between one defendant and one victim—this was a credibility contest, supported by physical evidence, among the [petitioner] and Simpson, his assault victim and attempted murder victim; Dozier, an eyewitness to the assault and an attempted murder victim; and Jamison, the mother of his child, with whom he was residing at the time of the shooting. The evidence showed no connection between Jamison and the victims, and therefore no reason to suspect that she offered false testimony to corroborate the stories of Simpson and Dozier. The evidence also showed that Simpson and Dozier had no personal animus toward the [petitioner], and therefore no motivation to fabricate a story. The physical evidence showed conclusively that the gun from which the bullets were fired was the same gun that was recovered after Jamison told the police where she disposed of it after it was fired by the [petitioner]. The testimony of the witnesses in this case, who had very different connections and relationships with the [petitioner], and which was supported by the physical evidence, strongly supported the [petitioner's]

conviction." Id., 647.

After the petitioner's conviction was affirmed on direct appeal, he filed his first petition for a writ of habeas corpus. "In that petition, the petitioner challenged his underlying conviction on the ground of ineffective assistance of counsel . . . [and alleged] that his trial counsel, [Robert] Berke, had been ineffective in failing properly to investigate all possible exculpatory and/or alibi witnesses who might have supported his defense at trial. . . . The habeas court [*Schuman, J.*] rejected that claim . . . conclud[ing] that Berke did not render ineffective assistance of counsel and that his failure to call several individuals as alibi witnesses at the criminal trial was a valid strategic decision. The [habeas] court credited Berke's testimony that he tried to discourage the petitioner from testifying at the criminal trial but that the petitioner wanted to testify regardless of whether the alibi witnesses did so. The petitioner's testimony differed from that which would have been offered by the putative alibi witnesses. The [habeas] court noted that as conflicting as the petitioner's own versions of his alibi were, the addition of alibi witnesses would likely have made matters worse for the petitioner. The [habeas] court thereafter denied his petition for certification." (Citation omitted; internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 146 Conn. App. 877, 880–81, 81 A.3d 259 (2013), cert. denied, 322 Conn. 905, 139 A.3d 708 (2016). The petitioner appealed from the denial of his petition for certification and made three arguments to this court.

"First, he claimed that, when deciding his claim of ineffective assistance of counsel, the habeas court improperly had applied the presumption of attorney competence set forth in *Strickland* v. *Washington*, [466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d (1984)]. Second, he claimed that the habeas court improperly had defined the concept of exculpatory evidence, thereby, assertedly, making it futile for him to present evidence regarding the psychiatric history of Jamison, which Berke had failed to elicit during trial. Third, he claimed that the [habeas] court improperly avoided certain ethical issues when determining that Berke's decision not to present alibi witnesses at the trial had been a strategic decision. . . . This court was not persuaded by the petitioner's arguments, and thus ordered that his appeal from the denial of his first habeas petition be dismissed." (Citation omitted.) *Harris* v. *Commissioner of Correction*, supra, 146 Conn. App. 881.

The petitioner filed a second petition for a writ of habeas corpus, and claimed that his first habeas counsel, Justine Miller, had been ineffective because: "(1) [she] failed to call . . . Jamison who would recant her trial testimony and say that [the petitioner] did not shoot the victims; (2) [she] did not subpoena Jamison's medical records which document[ed] her mental disor-

der; and (3) [she] did not subpoena alibi witnesses to testify at the habeas trial. . . . [T]he court, *T. Santos, J.* . . . dismissed the petition upon finding that the petitioner had failed to meet his burden of proving, under the first prong of *Strickland,* that Miller's performance was ineffective. . . . [T]he petitioner filed a petition for certification to appeal from the dismissal of his amended second petition for a writ of habeas corpus, which [the second habeas court] . . . granted . . . ." (Internal quotation marks omitted.) Id., 882. This court affirmed the judgment of the second habeas court, agreeing that the petitioner had failed to demonstrate that Miller's performance was deficient. Id., 889.

In his third habeas petition, the petitioner alleged, in relevant part, that his second habeas counsel, Joseph Visone, "was ineffective for failing to show that [Miller] was ineffective for failing to show that [Berke] rendered ineffective assistance of counsel . . . for failing to subpoena [Jamison's psychiatric] records . . . ." The habeas court, *Sferrazza, J.,* denied the petition, concluding that the petitioner failed to establish that Visone was ineffective or that the petitioner was prejudiced.

The petitioner filed a petition for certification to appeal from the denial of his amended third petition for a writ of habeas corpus on October 19, 2017. The habeas court denied the petition for certification to appeal on October 20, 2017, and the petitioner appealed to this court.

The petitioner claims on appeal that the habeas court abused its discretion in denying his petition for certification to appeal from the denial of his third petition for a writ of habeas corpus that alleges ineffective assistance of habeas and trial counsel for failing to obtain Jamison's psychiatric records. Because the petitioner failed to establish that Jamison would have consented to a review of her records, we conclude that the habeas court did not abuse its discretion when it denied the petition for certification to appeal and agree with the habeas court that the petitioner failed to demonstrate that his prior habeas and trial counsel were ineffective.

A petitioner can only obtain appellate review of the denial of his petition for certification to appeal by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden,* 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden,* 230 Conn. 608, 612, 646 A.2d 126 (1994). "First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must prove that the decision of the habeas court should be reversed on the merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of

reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Mejia* v. *Commissioner of Correction*, 112 Conn. App. 137, 144, 962 A.2d 148, cert. denied, 291 Conn. 910, 969 A.2d 171 (2009).

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Internal quotation marks omitted.) *Mercado* v. *Commissioner of Correction*, 183 Conn. App. 556, 561, 193 A.3d 671, cert. denied, 330 Conn. 918, 193 A.3d 1211 (2018). We, therefore, address the petitioner's claim that the habeas court improperly concluded that the petitioner's prior habeas and trial counsel were not ineffective by failing to obtain Jamison's psychiatric records.

We begin by noting our well settled standard of review in a habeas corpus proceeding contesting the effective assistance of habeas counsel. "Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 797, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004).

"The use of a habeas petition to raise an ineffective assistance of habeas counsel claim, commonly referred to as a habeas on a habeas, was approved by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992). In *Lozada*, the court determined that the statutory right to habeas counsel for indigent petitioners provided in General Statutes § 51-296 (a) includes an implied requirement that such counsel be effective, and it held that the appropriate vehicle to challenge the effectiveness of habeas counsel is through a habeas petition. . . . In *Lozada*, the court explained that [t]o succeed in his bid for a writ of habeas corpus, the petitioner must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective." (Citation omitted; internal quotation marks omitted.) *Gerald W.* v. *Commissioner of Correction*, 169 Conn. App. 456, 463–64, 150 A.3d 729 (2016), cert. denied, 324 Conn. 908, 152 A.3d 1246 (2017).

As to each claim of ineffectiveness, the petitioner must satisfy the familiar two-pronged test set forth in *Strickland* v. *Washington*, supra, 466 U.S. 687. "First,

the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . In other words, a petitioner claiming ineffective assistance of habeas counsel on the basis of ineffective assistance of trial counsel must essentially satisfy *Strickland* twice . . . ." (Citation omitted; internal quotation marks omitted.) *Gerald W.* v. *Commissioner of Correction*, supra, 169 Conn. App. 464.

The performance inquiry centers on "whether counsel's assistance was reasonable considering all the circumstances. . . . Judicial scrutiny of counsel's performance must be highly deferential and courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . With respect to the prejudice prong, the petitioner must establish that if he had received effective representation by habeas counsel, there is a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . ." (Citation omitted; internal quotation marks omitted.) Id., 464–65. "Simply put, a petitioner cannot succeed as a matter of law . . . on a claim that his habeas counsel was ineffective by failing to raise a claim against trial counsel or prior habeas counsel in a prior habeas action unless the petitioner ultimately will be able to demonstrate that the claim against trial or prior habeas counsel would have had a reasonable probability of success if raised." *Lebron* v. *Commissioner of Correction*, 178 Conn. App. 299, 320, 175 A.3d 46 (2017), cert. denied, 328 Conn. 913, 179 A.3d 779 (2018).

The petitioner alleges that Berke was ineffective because he "failed to pursue Jamison's psychiatric history or subpoena [Department of Correction] records for use as impeachment," and that he "could have satisfied the preliminary showing required by *State* v. *Esposito*, 192 Conn. 166, [471 A.2d 949] (1984), such that Jamison's testimony would have been stricken had she not consented to an in camera inspection of the psychiatric records . . . that an in camera inspection of the records would have revealed information relevant to Jamison's testimonial capacity such that her testimony would have been stricken had she not consented to

disclosure of the records . . . for use as impeachment [and] that Jamison's testimony would have been severely undercut by the information contained in [her psychiatric] records."[1] Because the petitioner failed to produce evidence that Jamison would have consented to a review of her records at the time of trial, we disagree.[2]

"The psychiatrist-patient privilege, which is codified at [General Statutes] § 52-146e (a), prohibits the disclosure of any communications and records that identify a person who has communicated with a psychiatrist for the purpose of diagnosis or treatment without the express prior consent of the patient or his authorized representative. The privilege applies to all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist . . . . In general, [our Supreme Court has] interpreted the privilege broadly and its exceptions narrowly . . . [and has] sometimes used language suggesting that, when no statutory exception applies, the privilege is absolute. . . . The broad sweep of the statute covers not only disclosure to a defendant or his counsel, but also disclosure to a court even for the limited purpose of an in camera examination." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Fay*, 326 Conn. 742, 751–52, 167 A.3d 897 (2017).

The petitioner has produced no evidence that Jamison would have, at the time of trial, consented to a review of her records, especially given that Jamison testified to the habeas court that she would not sign a release for her records because she was afraid that evidence of her mental health would be used against her in custody disputes.[3] As the petitioner has not provided evidence that Jamison, during the trial, would have consented to a review of her psychiatric records, the petitioner's claim fails.

We, therefore, conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal because the petitioner has failed to demonstrate that his claim of ineffective assistance of habeas and trial counsel was adequate to deserve encouragement to proceed further. We, accordingly, dismiss the petitioner's appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner further argues that Miller was ineffective for failing to subpoena the records, to examine Jamison, and to elicit testimony from Berke to support this claim of ineffectiveness against Berke, and that Visone was ineffective for failing to subpoena the records and to elicit testimony to support a claim of ineffectiveness against Miller. Because we conclude that Berke was not ineffective, we need not address these arguments.

Even if we were to reach the petitioner's arguments regarding the performance of his prior habeas counsel, this court already has rejected the petitioner's claim that Miller was ineffective for failing to subpoena Jamison's records and concluded that Miller made a reasonable strategic decision. *Harris* v. *Commissioner of Correction*, supra, 146 Conn. App. 889. Miller

indicated that psychiatric records, if disclosed, might undermine the reliability of the retraction she believed Jamison might make of her trial testimony. Id., 885. Miller also stated that she did not believe the psychiatric records were pertinent to Jamison's mental state as of the time of the crime and the petitioner's criminal trial. Id., 885–86.

[2] The petitioner additionally argues that Berke could have satisfied the preliminary showing required by *State* v. *Esposito*, supra, 192 Conn. 166, such that Jamison's testimony would have been stricken had she not consented to an in camera inspection of the psychiatric records. The substance of the petitioner's argument, however, fails to meet the standard set forth in *Esposito*.

As our Supreme Court observed in *Esposito*, the mere existence of a psychiatric disorder does not automatically impugn a witness' ability to testify truthfully or to relay events accurately, nor does it automatically subject that witness' psychiatric records to disclosure. See *State* v. *Blake*, 106 Conn. App. 345, 352, 942 A.2d 496 ("[t]he linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the [witness'] ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality and disclosing them to the defendant in order to protect his right of confrontation" [internal quotation marks omitted]), cert. denied, 287 Conn. 922, 951 A.2d 573 (2008). To make a threshold showing that an in camera review is appropriate, the petitioner must show that the witness had a "substantially diminished" capacity to "observe, recollect and narrate" the event. *State* v. *Esposito*, supra, 192 Conn. 176. The petitioner has produced no evidence that Berke could have made a showing that Jamison may have been experiencing manifestations of a schizophrenic episode or other mental health event that would have substantially diminished her testimonial capacity at any time relevant to her account of the incident or when she was testifying at the criminal trial.

The petitioner, therefore, fails to establish that Berke could have made a threshold showing that at any pertinent time Jamison had a mental health illness that affected her testimonial capacity in any respect, let alone to a sufficient degree to warrant further inquiry. See id., 180.

[3] Jamison gave the following testimony at the petitioner's third habeas trial when she was questioned by the petitioner's counsel:

"Q. Do you recall not actually signing [a] release . . . for your . . . mental health records for our investigator?

"A. No. Because I don't trust [my daughter's] father.

"Q. Okay.

"A. I think in the future he would try to hold my mental [records] against me when it comes to my daughter and my granddaughter, so I won't sign them.

"Q. Okay. Would you be willing to now?

"A. No."

––––––––––––––––––––––––––––